UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:07CV-351-R

TEAMSTERS LOCAL UNION NO. 89                        PLAINTIFF
                                                                               COUNTERCLAIM DEFENDANT

v.

THE KROGER CO.                                              DEFENDANT
                                                                                    COUNTERCLAIMANT

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS
                                                                COUNTERCLAIM DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on the Defendant Kroger Co.'s ("Kroger") Motion to Dismiss the First Amended Complaint (Docket #31). The Plaintiff, Teamsters Local Union No. 89 ("Local 89") has responded (Docket #33), and Kroger has replied (Docket #35). Before the First Amended Complaint was filed, Kroger had also filed a motion to dismiss the original complaint (Docket #9), and that matter was ripe. The Court considers the immediate motion as supplanting the first, and the first motion to dismiss should be removed from the docket. This matter is now ripe for adjudication. For the following reasons, Kroger's Motion to Dismiss is **DENIED.**

**BACKGROUND**

This matter arises from a complaint to compel arbitration filed by Local 89 against Kroger. Kroger filed a motion to dismiss the original complaint on August 6, 2007, and Local 89 filed an amended complaint on September 20, 2007. Kroger then filed a motion to dismiss the amended complaint. Local 89 asks this Court to compel arbitration between Kroger and itself pursuant to § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185.

Local 89 and Kroger entered into a collective bargaining agreement known as the Kroger Master Agreement ("Master Agreement"), effective September 11, 2005, through September 10, 2011. The Master Agreement is a national collective bargaining agreement between Kroger and various Teamster local unions. The Agreement contains grievance procedures for settlement of disputes. Local 89 and Kroger also entered into a local supplemental agreement in conjunction with the Master Agreement covering issues related to local operations.

Local 89 represented Kroger employees at Kroger's Louisville, Kentucky, Distribution Center ("KDC"). The employees represented by Local 89 worked directly for Kroger. In late 2006, Kroger announced its intention to transfer the operation of the KDC to Transervice Logistics, Inc. and Zenith Logistics. Transervice and Zenith would be responsible for transporting products from the KDC to Kroger stores, and Kroger would not longer be responsible for doing that work itself. Local 89 was not a participant in the negotiations that resulted in the transfer.

The transfer occurred in February 2007. On April 19, 2007, Kroger and Local 89 entered into a "Letter of Understanding" regarding the transfer. The parties dispute the meaning and effect of this Letter of Understanding. The Letter states that it will be effective only if Local 89 enters into ratified labor agreements with Transervice and Zenith covering the former Kroger employees.

On May 9, 2007, Local 89 filed a grievance, pursuant to the procedures set forth in the Master Agreement, alleging that Kroger was violating Article 25 of the Master Agreement as well as the "Driver Dispatch County" provision of the local supplement by subcontracting driving work originating from the KDC to third party carriers other than Transervice, while

2

bargaining unit drivers and mechanics were available. On May 14, 2007, Kroger responded to the grievance in a letter stating that it would not process the grievance because the alleged violations occurred after Kroger transferred the operation of the KDC to Transervice and Zenith, and it no longer had a collective bargaining relationship with Local 89 and there were therefore not applicable grievance procedures through which to process Local 89's grievance.

After filing its complaint in this action, Local 89 filed a second grievance on August 24, 2007, again alleging that Kroger was violating Article 25 of the Master Agreement as well as the "Driver Dispatch County" provision of the local supplement by subcontracting bid runs and wheel runs to an outside carrier head hauling loads of out the KDC to different stores in the region. On August 27, 2007, Kroger responded to that grievance, stating that it would not process the grievance for the same reasons as the May 9 grievance.

Local 89 also filed two grievances against Transervice, alleging that Transervice was violating its contract with Local 89 by allowing a third party subcontractor to pull runs from the KDC. Local 89 alleged that Transervice should have taken action to prevent Kroger from subcontracting driving work out of the KDC.

On January 22, 2008, Local 89 and Transervice entered into arbitration pursuant to their collective bargaining agreement. In an award issued on February 21, 2008, the Arbitrator chose not to address the propriety of Kroger's decision to subcontract driving work to third parties, as Kroger was not a party to the arbitration. Instead, the Arbitrator found that there was insufficient evidence to support Local 89's proposition that Transervice had some control over the assignment of driving work out of the KDC. Instead, the Arbitrator denied Local 89's grievance because 100% of the jobs that Transervice did receive from Kroger were performed by Local 89.

There was nothing more for Transervice to do, and the fact that Kroger may have been dispatching delivery jobs to other parties was not pertinent to the resolution of Local 89's grievance against Transervice.

Prior to that arbitration, Local 89 filed its first amended complaint in this action seeking this Court to compel arbitration between itself and Kroger pursuant to the Master Agreement or, in the alternative, to award Local 89 damages for Kroger's breach of contract. The arbitration decision in the dispute between Local 89 and Transervice does not affect the Court's consideration of this action. Local 89 argues (1) Kroger's refusal to arbitrate or otherwise process its grievances is a breach of both the Master Agreement and the Letter of Understanding, which is thereby a breach of contract within the meaning of § 301 of the Labor-Management Relations Act of 1947; and (2) Kroger's assignment of driving work originating from the KDC to third party carriers other than Transervice is a breach of both the Master Agreement and the Letter of Understanding, which is thereby a breach of contract within the meaning of § 301 of the Labor-Management Relations Act of 1947. Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...may be brought in any district court of the United States having jurisdiction of the parties."

## STANDARD

**1. FED. R. CIV. P. 12(b)(6) Motion to Dismiss**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*,

4

188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

**2. Arbitration**

The Court decides as a matter of law whether the parties have contractually agreed to arbitrate a claim. "[W]hether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination. . ." *United Steelworkers of Am. v. The Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994). The Court's role, however, "is limited to determining whether the arbitration provision of the agreement [is] susceptible of an interpretation that would make the grievance arbitrable." *Id*. at 130 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Therefore, in this Opinion, the Court will not consider the merits of Local 89's claim, but will consider only whether it may be suitable for arbitration and can therefore survive the Motion to Dismiss. *Id*. at 131.

"[A]rbitration is a matter of contract, and a party cannot be required to submit to

arbitration any dispute which he has not agreed so to submit." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200 (1991) (quoting *Warrior & Gulf*, 363 U.S. at 582); *see also Mead*, 21 F.3d at 131. "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract between the parties." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547 (1964). The issue in this matter is whether Kroger agreed, under the Master Agreement or the Letter of Understanding, to arbitrate grievances such those filed by Local 89 after it transferred operational control of the KDC to Transervice and Zenith.

In the Sixth Circuit, a Court must first determine whether a valid arbitration clause binds the parties. *See Mead*, 21 F.3d at 131. The Court must then determine whether the matter at issue is within the scope of the valid arbitration clause set out in the agreement. *Id.* Once the Court has determined that a valid arbitration clause applies, there is a presumption of arbitrability on related matters. *Id.* The Court should "resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *AT&T Techs. v. Communications Workers*, 475 U.S. 643, 648-51 (1986)).

The Court must examine whether the arbitration clause is broad or narrow to determine the strength of the presumption in favor of arbitrability. *See United Steelworkers of Am. v. The Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005) (citing *United Steelworkers of Am. v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000)). An arbitration clause is considered broad if it prescribes arbitration for any dispute arising out of the agreement or any controversy relating to the interpretation of the agreement. *See id.* at 788-89 (discussing examples of broad

arbitration clauses). "In cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id*. (quoting *AT&T*, 475 U.S. at 650). An arbitration clause is considered narrow if it limits the matters for arbitration specifically to those covered under the terms of the collective bargaining agreement. *See id.* at 790. If an arbitration clause is determined to be narrow, the Court must simply decide whether the dispute regards the subject matter set out in the collective bargaining agreement.

## DISCUSSION

In considering Kroger's Motion to Dismiss, the Court must determine whether Local 89 has alleged in its first amended complaint a scenario in which it would possible for this Court to compel arbitration of its grievances against Kroger, or, in the alternative, to award Local 89 damages for Kroger's alleged breach of contract in failing to submit Local 89's grievances to arbitration. The issue is not whether this Court will ultimately compel Kroger to submit Local 89's claims to arbitration or award Local 89 damages for Kroger's failure to do so.

Local 89 set forth few factual allegations in its amended complaint. Local 89 does assert that Kroger breached the Master Agreement by refusing to submit Local 89's grievances to arbitration, in violation of Article 8, entitled "Disputes or Grievances." Local 89 also alleges that the "Letter of Understanding made certain provisions for Kroger to assign bargaining unit work, specifically driving work originating from the Louisville, Kentucky Distribution Center, to third-party carrier Transervice" and that "on or about May 1, 2007, Kroger began assigning driving work originating from the Louisville, Kentucky Distribution Center to various third party

7

carriers other than Transervice."

In the grievances, Local 89 alleges that Kroger violated the Master Agreement and the "Driver Dispatch County" provision of the local supplement[1] by subcontracting work to third party drivers. However, Local 89 attached the grievances to its complaint, but did not incorporate their allegations into the complaint itself. Thus, the circumstances surrounding the events alleged by Local 89 are not all set forth in the complaint, but this is of no consequence if Local 89 could conceivably prove any set of facts in support of its allegations that would entitle it to relief.

**1. Has Local 89 Sufficiently Alleged a Breach of the Master Agreement?**

The arbitration clause of the Master Agreement, contained in Article 8, Section 8.1 provides:

> Should any employee have any grievance dispute or complaint over the interpretation or application of the contents of this Agreement, there shall be an earnest effort by the employee, the Union and the Employer to settle the matter promptly.

The grievance procedures go on to provide for binding arbitration before a joint committee in the event the parties are unable to resolve a grievance and for binding arbitration before an impartial arbitrator in the event the joint committee is deadlocked.

Kroger argues that Local 89 has not set forth any basis on which this Court may compel arbitration of Local 89's grievances or award Local 89 damages because the grievances Local 89 seeks to arbitrate arose at a time when (1) Local 89 did not represent any Kroger employees and Kroger had no 'employees' at the KDC because it had subcontracted the KDC work to Transervice and Zenith; and (2) there was no longer a collective bargaining relationship between

---

[1] The local supplement has not been provided to the Court.

the parties because the Master Agreement was no longer in force, as Local 89 had entered into new collective bargaining agreements with Transervice and Zenith, per the requirements of the Letter of Understanding.

First, Kroger argues that the arbitration clause contained in the Master Agreement is narrow, as it is limited to "employee" grievances, and as Local 89 did not represent Kroger employees when it filed its grievances, its complaint must be dismissed. Local 89 asserts and Kroger concedes that former employees may claim rights under a collective bargaining agreement, and it is not necessary for a union to represent current company employees in order to compel arbitration. Kroger and Local 89 dispute, however, the correct standard under which to analyze "former employee" grievances in this case.

Kroger argues this situation is akin to an expired collective bargaining agreement, while Local 89 asserts this is more similar to the award of benefits under a collective bargaining agreement to retired workers or transferred employees. With an expired collective bargaining agreement, the employees often still work for the company, but claim rights under an old agreement. Retired or transferred employees no longer work for the company, but may still claim rights under a current agreement.

### A. Kroger's Interpretation

Kroger cites *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 247 (1977), a case filed by a union to compel arbitration over severance pay under a collective bargaining agreement cancelled by the union. The agreement's arbitration clause provided that "'any grievance' arising between the parties was subject to binding arbitration." *Id.* at 245. The United States Supreme Court held:

9

> The parties' failure to exclude from arbitrability contract disputes arising after the termination [of the collective bargaining agreement],...affords a basis for concluding that they intended to arbitrate all grievances *arising out of* the contractual relationship.  In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

430 U.S. at 255 (emphasis added).  The duty to arbitrate does not end as of the date of expiration, but after expiration the court cannot compel arbitration unless the grievance 'arises out of' the agreement.  *See id.*

Here, the Master Agreement's arbitration provision does not exclude from arbitration disputes arising after employee termination or transfer, and is otherwise very broad in that it provides for arbitration of "*any* grievance dispute or complaint over the interpretation or application of the contents of this Agreement."

However, Kroger argues that the former employees represented by Local 89 still cannot claim rights under the Master Agreement because a post-expiration grievance may be said "to arise under" the contract in only three situations, none of which apply here.  *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991).  A post-expiration grievance arises under the contract: (1) "only where it involves facts and occurrences that arose before expiration;" (2) "where an action taken after expiration infringes a right that accrued or vested under the agreement;" or (3) "where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement."  *Id.*

Kroger concedes that *Litton* involved an *expired* collective bargaining agreement, and the Master Agreement here has not expired, at least as between Kroger and other local unions.  However, Kroger argues that *Litton's* rationale is applicable to a situation where the company no longer employs any employees represented by the union, and the union's grievances allege

10

violations occurring after the end of the employment relationship.

Kroger argues that none of the three *Litton* situations apply here and Local 89's complaint should be dismissed because (1) the facts and circumstances alleged by Local 89 took place after Kroger transferred operational control of the KDC[2] and therefore could not have arisen before the end of the employment relationship; (2) the grievances do not allege a violation of any accrued or residual rights the employees might have; and (3) the Agreement's arbitration clause does not provide that it will survive expiration.

### B. Local 89's Interpretation

Local 89 does not argue that its grievances fit within any of the *Litton* situations. Instead, Local 89 makes an entirely different argument. Local 89 simply asserts that a union's ability to enforce its collective bargaining agreements is not dependent on the continued employment of bargaining unit members, citing a line of retiree cases as support for this proposition. *See, e.g. Cleveland Elec. Illuminating Co. v. Util. Workers Union, Local 270*, 440 F.3d 809, 815 (6th Cir. 2006); *Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293, 1296 (8th Cir. 1985); *United Food & Commercial Workers Union, Local 197 v. Alpha Beta Co.*, 736 F.2d 1371, 1374-75 (9th Cir. 1984); *United Steelworkers of Am. v. Canron, Inc.*, 580 F.2d 77 (3d Cir. 1978). The retiree cases establish that a union's right to enforce a collective bargaining agreement through arbitration does not necessarily disappear once employees are no longer in the bargaining unit. *See id.*

---

[2]The First Amended Complaint states that its May 9 grievance is based on Kroger's actions beginning on or about May 1, 2007. The August 24 grievance, filed with the First Amended Complaint, states that it is based on Kroger's actions beginning on or about the week of August 20, 2007.

11

Kroger argues that these retiree cases are inapplicable here because the claims of the retirees in each case actually "arose under" the respective collective bargaining agreements, and are therefore actually in line with *Litton*.  Kroger asserts that the retiree cases clearly involve grievances claiming accrued or vested employee benefits arising under an applicable prior agreement, thus comporting with the second *Litton* situation.  As stated above, it is Kroger's position that Local 89's grievances do not allege a violation of any accrued or residual rights under the Master Agreement.

In *Cleveland Electric*, the union filed a grievance on behalf of its members and retirees against Cleveland Electric, alleging that certain changes in health benefits were a violation of the parties' collective bargaining agreement.  *Cleveland Electric*, 440 F.3d at 811.  Cleveland Electric contended that the presumption of arbitrability did not apply to retirees, while the union argued the presumption did apply, that the dispute involved the interpretation of a provision of the collective bargaining agreement, and the language of the agreement was broad enough to encompass the dispute.  *Id.* at 814.

The Sixth Circuit held that "the presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration."  *Id.* at 816.  The court made it clear that the union's standing to represent the retirees was based on the fact that the union and the company had "bargain[ed] for retiree's benefits and include[d] the benefits in their contract."  *Id.* at 815.

Thus, the court affirmed that the retirees' grievances were arbitrable, and indicated those rights were arbitrable because they had "vested," citing *Allied Chemical & Alkali Workers, Local*

12

*Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971).  In *Allied Chemical*, "the Supreme Court recognized that a union and company may agree to bargain for retirees' benefits, and once these bargained-for benefits are vested, retired workers may have contract rights under the collective bargaining agreement which they could enforce pursuant to § 301 of the Labor Management Relations Act if the benefits are changed." *Allied Chemical*, 404 U.S. at 181 n. 20.

Kroger argues that instead of providing support for Local 89's position, this is in accord with its position.  Under *Litton*, a post-expiration grievances arises under the collective bargaining agreement "where an action taken after expiration infringes a right that accrued or vested under the agreement." *Litton*, 501 U.S. at 205-06.  However, Kroger, asserts, Local 89 cannot use this as support for its position because its grievances do not allege a violation of any accrued or residual rights the employees might have and do not arise under any agreement it had with Kroger.

**2.  Has Local 89 Sufficiently Alleged a Breach of the Letter of Understanding**?

Kroger argues that there are several reasons why the Letter of Understanding, as a separate document, cannot support Local 89's claim for arbitration or damages.  Kroger argues (1) the grievances only allege violations of the Master Agreement and local supplement and do not implicate the Letter in any way; (2) the Letter's arbitration clause restricts arbitration to "outstanding grievances resulting from employee's employment with Kroger;" and (3) the Master Agreement cannot be used to process a grievance arising out of Letter, because a grievance must arise out of the agreement under which arbitration is sought.

First, Kroger argues, assuming that the Letter of Understanding does provide a separate basis for arbitration, that when it received Local 89's grievances, it could not have been expected

13

to submit them to arbitration based on an alleged violation of the Letter, because they do not implicate or mention the Letter in any way. Kroger argues that arbitration cannot be ordered based on grievances that do not claim a violation of the agreement under which arbitration is sought. However, this is not sufficient for a motion to dismiss because Local 89 filed this action to compel arbitration, and its amended complaint clearly asserts, in both Counts I and II, an alleged violation of the Letter of Understanding. This is enough for the Court to find that Local 89 seeks arbitration based on a violation of the Letter of Understanding.

Next, Kroger argues that the arbitration clause in the Letter restricts arbitration to "outstanding grievances resulting from employee's employment with Kroger." Local 89's grievances were filed on May 9, alleging a violation beginning on or about May 1, and August 24, alleging a violation beginning on or about the week of August 20, 2007. The Letter of Understanding was signed April 19, and for any grievances to arbitrable, they must have arisen before that date and resulted "from the employee's employment with Kroger." Clearly, Kroger argues, the grievances do not fit within the Letter's arbitration provision.

Local 89's response to this argument is same as above, that the Letter of Understanding and the Master Agreement are unexpired live contracts governing the parties' relationship.

Finally, Kroger argues that given the restrictive arbitration clause in the Letter, the Master Agreement's more expansive arbitration provisions cannot be substituted to process a grievance arising under the Letter. The arbitration clause of the Letter, in Section 5, reads:

> Kroger will meet with Teamsters Local 89 and either resolve any outstanding grievances resulting from their employment with Kroger or permit the grievance to proceed through the Kroger Master Grievance Process.

Kroger asserts that a grievance must 'arise out of' the agreement under which arbitration

is sought, citing *Int'l Bhd. of Teamsters, Local Union 1199 v. Pepsi-Cola Gen. Bottlers, Inc.*, 958 F.2d 1331, 1333, 1338 (6th Cir. 1992) (holding that an employee's grievance to seek reinstatement under the NLRA was not subject to arbitration under the new collective bargaining agreement between the parties because it contained no contractual right to reinstatement). Thus, Kroger essentially argues that if Local 89's grievances allege a violation of the Letter, it must seek arbitration under the Letter. It cannot seek arbitration under the Master Agreement because, as discussed above, arbitration under the Master Agreement is limited to a grievance by an "employee." Further, the Letter's arbitration provision is too narrow to encompass Local 89's grievances. Therefore, the complaint must be dismissed.

In contrast, Local 89 calls the Letter of Understanding a "side letter." Side letters are subject to the "scope test" adopted by the Sixth Circuit for determining whether disputes arising from a side letter are subject to a collective bargaining agreement's arbitration clause. *United Steelworkers v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 279 (6th Cir. 2007). Under the scope test, "unless the parties indicate otherwise, disputes over a side agreement are arbitrable if the subject matter of the side agreement is within the scope of the CBA's [collective bargaining agreement's] arbitration clause." *Id.* In determining the arbitrability of side letters and side agreements using the scope test, the Court must begin by analyzing the agreement's arbitration clause. *Id.* (citing *Inlandboatmens Union v. Dutra Group*, 279 F.3d 1075, 1080 (9th Cir. 2002)). The Court should then look "to the subject matter of the side agreement to determine if it falls within the clause's intended coverage." *Id.*

Local 89 argues that the Letter is clearly within the scope of the Master Agreement's arbitration provisions. It argues that the topics of the Letter, such as successorship,

15

subcontracting, and pensions, are also topics addressed in the Master Agreement. Local 89 lists the Letter's qualities that serve to confirm that it is subject to the Master Agreement's arbitration provisions: (1) it has a definite term of April 20, 2007, to September 10, 2011; (2) it contains explicit restrictions on Kroger's right to subcontract work to third parties other than Transervice or Zenith; (3) it makes the collective bargaining agreement with Transervice applicable to any other third parties should Kroger decide to subcontract transportation work to someone other than Transervice (and that agreement also contains an arbitration provision); and (4) it re-establishes the applicability of the Kroger Master Agreement and Local 89 Supplement should Kroger discontinue the subcontracting of the transportation work.

      In contrast, Kroger argues that the terms of the Letter make it clear that it was meant to signal that at least as of April 20, 2007, it was no longer the employer of the warehouse, distribution, and maintenance employees at the KDC. Kroger argues that the Letter is not within the scope of the Master Agreement because (1) the Letter indicates that it will only go into effect if "Local 89 enters into ratified labor agreements with Transervice and Zenith," indicating that Local 89's grievances should be settled under those agreements; (2) because it agreed to employ all bargaining unit members working at the KDC should it "resume such operations as employer," it clearly did not consider itself the current employer of any Local 89 members working at the KDC; (3) as discussed repeatedly, Local 89's grievances could not have arisen out of any collective bargaining relationship between the parties because the Letter is dated April 20, 2007, and Local 89 filed its grievance on May 9, 2007, "well after the operational turnover and effective dates of the new bargaining agreements with Transervice and Zenith;" and (4) the Letter contains a narrow arbitration provision, restricted to "outstanding

16

grievances resulting from [employee's] employment with Kroger," and grievances filed in May and August could not have been "outstanding" as of the previous April.

### 3. May Local 89's Claims Survive the Motion to Dismiss?

Perhaps as a method of avoiding Kroger's arguments and surviving the motion, Local 89 asserts that the Letter of Understanding and the Master Agreement are unexpired live contracts governing the parties' relationship, and therefore the *Litton* rationale, persuasively argued by Kroger, does not even apply here. According to Local 89, the Court does not need to determine whether the 'post-expiration' grievances 'arise under' the contract because the Master Agreement still governs Local 89's relationship with Kroger. However, Local 89 has cited no support for this assertion, and Kroger denies that the Master Agreement is still in effect.

Kroger and Local 89's stances regarding the status of the Master Agreement as between them are clearly at odds. Local 89 does not state why it believes the Master Agreement is an unexpired live contract between itself and Kroger, and the Court has been presented with no evidence that it still governs the parties' relationship. By all accounts, and as per the Letter of Understanding, Local 89 has entered into new collective bargaining agreements with Transervice and Zenith governing the employees at the KDC. However, neither party has provided the Court with any evidence of what the terms of these new agreements may be regarding arbitration and/or the effect of prior agreements.

Local 89 argues that "Kroger's effort to contest arbitrability devolves into a discussion of the factual and contractual support for Local 89's grievances, both of which are matters for an arbitrator." Therefore, it asserts, the Court should deny Kroger's Motion to Dismiss. Contrary to Local 89's assertion, the fact that it has simply alleged that it is entitled to arbitration under

the Master Agreement is not enough to survive a motion to dismiss.  It is true that the Court should not decide the merits of Local 89's claims, but it does not have to accept Local 89's allegations as true if they contain unwarranted factual inferences or legal conclusions masquerading as fact.  *Blakely*, 276 F.3d at 863.

Assuming Local 89's contentions are true, "it is conceivable that a set of facts could be proved in support of the complaint's allegations" under which Local 89 would be entitled to an order to compel arbitration or an award of damages, and its complaint will not be dismissed. *Miller v. Currie*, 50 F.3d 373, 378 (6th Cir. 1995).  There is some uncertainty as to the current effect of the Master Agreement and Letter of Understanding, and as to the exact nature of any new collective bargaining agreements covering the former Kroger employees now working at the KDC.  This decision should not be construed as suggesting that Local 89 ultimately will succeed in proving such a set of facts, only as holding that its pleading is not so deficient that it should be denied the opportunity to present its evidence.

In short, the Court is uncomfortable in granting the Motion to Dismiss.  In the end, the Court may be faced with the same factual and legal arguments.  Nevertheless, the Court will provide an opportunity for the parties to develop any additional record and focus their arguments.

## CONCLUSION

For the foregoing reasons, Kroger's Motion to Dismiss the First Amended Complaint is **DENIED.**

An appropriate order shall issue.